Good morning, Zola v. TD Ameritrade, and you are Mr. Fleming? I am. Good morning. You may proceed. Good morning. May it please the Court. Joel Fleming for Appellants J. Zola and Jeremiah Joseph Lowney, who I'll call the Zola Plaintiffs. The Zola Plaintiffs are retail investors who have pled a single count for breach of contract against their broker, TD Ameritrade. The Zola Plaintiffs allege that TD Ameritrade promised to, quote, consider a wide variety of factors, end quote, in considering where to route their orders, whether to an order internalizer or an exchange. And they allege that TD Ameritrade breached that contract by considering only one factor, the receipt of payments for order flow. As a result, virtually all orders submitted by TD Ameritrade retail investors were routed to one of three order internalizers or exchanges, all of which did make payments for order flow. And as a result, investors' orders were subject, were exposed, rather, to high-frequency traders. And as detailed in the complaint, high-frequency traders are toxic as counterparties for retail investors. They're more sophisticated. They move more quickly. As a result, plaintiffs suffered harm. Fifteen years ago, in the Green case — Damages would be measured by individual trades that were wrongly conducted under this relationship? I think there would be a question about how damages would be measured. We have an — What would your position be? So we have — What is your position? Our position, and it's set out in the papers, is that disgorgement is an appropriate remedy when there is an opportunistic and knowing breach of a contract. And that's based on a statement in the restatement — Would disgorgement be measured based on individual transactions of covered securities? Disgorgement would be measured by the order flow payments that defendants wrongfully received as a result of their knowing and opportunistic breach. You just avoided saying yes by using a lot of words that meant yes. It is a yes, and I think that that doesn't — That's all you have to say. I'm not going to occupy your whole argument. That's fair. But it is a critical point as to whether SLUSA should apply to these claims under DABIT. Well, I think DABIT goes to the question of whether misrepresentations, which weren't at issue — The reasoning in DABIT, not the holding. The reasoning in DABIT. And the holding went to whether so-called holder claims. So prior to the Supreme Court's decision in Blue Chips — So all your clients were holders at the time of the contract. A holder claim is something different. A holder claim is in the context of an investor who holds securities in a public company. Our clients are not investors, or at least not suing in their capacity as investors in TD Ameritrade. They're suing in their role as customers. And so what DABIT was talking about was prior to 1975, in the Supreme Court's decision in Blue Chips stamps, it was possible for an investor, someone who would purchase shares, the company later makes a misrepresentation, and the investor argues, well, I held on to my shares in reliance on that misrepresentation. DABIT was addressing whether that — You're talking about the facts of DABIT. Your clients were holders of investments at the time they entered into the relationship. And they were looking to do purchases and sales of covered securities under the agreement. That's correct. And my client — And the remedy sought is disgorgement of revenues and or profits from individual purchases and sales on behalf of your clients of covered securities. I would agree with all of that. And my — And we go on from there as to whether SLUSA applies. That's right. And my clients stand in a somewhat different position than the other people you'll hear from today. We're challenging only the misrepresentation element. And it's because the Zola plaintiffs — we were the first to file, and the Zola plaintiffs alone allege only a breach of contract claim. And 15 years ago in the Green case, which involved TD Ameritrade's predecessor, Ameritrade, this court held that a similar breach of contract claim, that one involving real-time quotes, again, for covered securities, that that claim was not precluded by the Securities Litigation Uniform Standards Act. Similarly, the Second Circuit in the Kingate case, the Ninth Circuit in the Freeman case — Green was before DABIT, but both Kingate and Freeman were decided after DABIT. Second Circuit and the Ninth Circuit in both of those cases held that a pure breach of contract case is not precluded under SLUSA. And I will say, and it goes a bit to Your Honor's question, I think the mistake that was combining all of the actions together. So at the same time, in the same order that it held that our case was precluded under SLUSA, if you read the facts section of the district court's opinion, it's drawn entirely from a different action, which is the Klein case filed after ours, which expressly did allege claims under the federal securities laws. And so I think the district court went astray in reasoning that because it was possible to plead a federal securities claim under the same facts, that therefore our claim and the other appellants who are here today — — SLUSA preclusion applies specifically to state law claims. I know it also encompasses federal law claims, but its typical application is state law claims attempting to use federal standards in a state law cause of action to get class action relief. That's right. And the mistake that many make is to ignore the explicit statement in DABA that SLUSA is a preclusion statute, not a preemption statute. And it only precludes — if you had brought this in state court on behalf of a class of 30, we wouldn't have this issue. I agree with that. DABA was addressing the in-connection with prong. It didn't address the misrepresentation prong. That's the big prong here, too. Our clients don't concede the in-connection with prong. We argue that there's simply no misrepresentation. And if you look at page 20 of defendant's brief, they only identify two allegations in our complaint. And the language of the statute says alleging. It doesn't say could have alleged. It doesn't say arising from facts that might support a federal securities claim. It says alleged. And so I think this court has to identify each complaint, and each complaint has to fall on its own merits. And so if you look, the only place in defendant's brief where they identify any allegations from the ZOLA complaint that they say state a misstatement are at page 20. The first, and I think it's really their core argument, is the contractual promise itself. And I think that simply proves too much. If it's the case that any promise in a contract is really a representation, then you simply couldn't have a breach of contract case that survives under SLUSA. And then the second is our allegation that investors in fact didn't know that their orders were being sold to the highest bidder, essentially. And again, if not disclosing a breach of contract is actually an omission, then again, it becomes impossible to plead a breach of contract case in the securities arena without falling under SLUSA. That can't be the law. And I think the Second Circuit decision in Kingate and the Ninth Circuit's decision in Freeman addressed this very cleanly. And these are both cases like ours where it's— I mean, you probably thought hard about this one. The Seventh Circuit panel that was split 1-1-1, would your position—if we adopt—would you prevail if we adopted the majority as well as the dissent? I think that Judge Hamilton's dissent is addressing the point that you're stressing. What about the majority? Would you also win under the majority's approach? So I assume by the Seventh Circuit decision that Your Honor is referring to the J.P. Morgan and Goldberg decisions that were submitted in the 28J letter? Right. So certainly if this Court is inclined to follow Judge Hamilton's dissent, that is a path that I would encourage. But even under the majority opinion, I think this case is still distinguishable. And the reasons are twofold. In the Holtz decision, the Court reasoned that the state law duty being alleged there was actually independent of the contract terms, and so it really was a fraud or misrepresentation claim in disguise. Here our claim is very closely tethered to the language of the contract. We're not alleging a breach of the duty of good faith and fair dealing floating out in the ether somewhere. We're focused exclusively on the language of the contract, which says T.D. Ameritrade shall consider a wide variety of factors, and then it enumerates those factors. And our argument is the contract required T.D. Ameritrade to consider those factors on an order-by-order basis, and that the evidence suggests that's not what happened. So I think it's different from Holtz in that respect. In Goldberg, they went even further. Goldberg had the original complaint alleged violations of the fiduciary duties of loyalty, care, and candor. Candor, again, should be a key word that raises for the Court that there's really a disclosure claim being in disguise here. I'll close by simply noting that this is far afield from what— No, it's Goldberg, because Judge Hamilton didn't sit on it. That's right. So Goldberg was—there was an allegation about a breach of the duty of candor. And again, that's not present here. I'll just say, if the Court finds promises made in a contract are actually representations for purposes of SLUSA, it's effectively immunizing brokers, mutual funds, others in the securities industry from class actions involving their contracts. And I don't think that's what Congress intended. Thank you. Very well. Mr. Love? Yes, may I please— Good morning. You may proceed. Good morning. Andrew Love for the appellant, Michael Saurbacker. I would like to address the SLUSAs in connection with language. And I'd like to start by discussing how to reconcile Chad Bourne's holding that to be in connection with the purchaser's sale of a covered security, the misrepresentation must, quote, be material to a decision by one or more individuals to buy or sell a covered security and reconcile that with the statement in Dabit—the statement in Chad Bourne that we do not modify Dabit. Chad Bourne repeatedly emphasized that the transaction to look at when determining whether a misrepresentation is in connection with the purchaser's sale is the transactions involving the securities themselves. The Court stated there must be a connection that matters where the misrepresentation makes a significant difference to somebody's decision to purchase or sell a covered security. Now, the dissent in Chad Bourne argued for a broader test that was rejected by the majority but was supported by Dabit, where SLUSA would preclude state claims if the misrepresentation merely coincided with the purchaser's sale. Excuse me. So what to make of Chad Bourne's majority saying it wasn't modifying Dabit, and then you have the dissent saying that the majority interpreted the phrase in connection with in a different manner than Dabit, and that the majority— Yes. The majority was responding to the dissent when it said we are not modifying Dabit, right? Specifically. That's what they said they were doing. The dissent accuses us of running away from Dabit. We're not doing that. I guess I would look at it the other way around, is that the dissent is saying, look at these narrowed the holding in Dabit, and I think what's significant is when in Chad Bourne the majority said we're not modifying Dabit, the way it described Dabit was that Dabit's holding was not just that the misrepresentation had to coincide with the purchaser's sale but also had to be material. It says that in that—on page 1066, I believe. It also used the material—it said Dabit also held this materiality standard, which in fact in Dabit never used the word material, but it was making that clear. And so the court with the majority in Chad Bourne explained was that while Dabit in other cases espoused a broader interpretation and used language such as touches upon the purchaser's sale or coincided with, as the court in Chad Bourne said at page 1069, every one of these cases concerned a false statement that was material to another individual's decision to purchase or sell covered security. It said at page 1067, each of these cases involved purchases or sales induced by the fraud. And so if I could make three quick points about this relationship with Dabit, I think while the court said it wasn't modifying Dabit, I think it's fair to say that it was clarifying that the connection must be material to the decision to purchase or sell covered security. And I think where it was not modifying Dabit was also because, as was just discussed, Dabit involved holder claims and it was ensuring that Dabit's holding that's lucid cover, these holder claims, was not at all impacted by Chad Bourne, which focused much more on, which focused on purchases and sales instead of holding. And thirdly, that it did not modify Dabit's holding that's lucid cover, not just conduct that would be, that would fall under the 10B private right of action, but also under government actions under SEC Rule 10B-5, and Chad Bourne said that it's broad enough to encompass those claims as well. And in fact, the court's opinion, this court's opinion in DUDEC, which predated both Dabit and Chad Bourne, I think anticipated Chad Bourne because it distinguishes claims where the misconduct caused plaintiffs to invest in inappropriate securities, which also applies, and made clear that that's different and distinguishable from claims arising out of broker-customer specific securities. And so, applying that standard here, it's lucid doesn't apply because TD Ameritrade's promise to use best execution was material to plaintiffs' decision to choose TD Ameritrade as a broker, but it was not material to the purchaser's sale of specific securities. It didn't induce investors to buy or sell securities. So, for example, you know, TD Ameritrade would promise to provide best execution. This is before the plaintiffs held or held any securities. It was choosing to, when it was choosing to decide what broker to use. Don't the claims clearly implicate deception and manipulation? Only, well, the claims involve a misrepresentation or omission, is what is alleged. With regard to not the purchaser's sale of specific securities, but to induce the investors to use TD Ameritrade as a broker, which is a separate and independent and earlier decision than the much later decision. Once an investor has chosen to use TD Ameritrade as a broker, maybe months later or some later period of time, they decide they want to invest, say, in IBM. And this has nothing to do with anything that TD Ameritrade told them to. It isn't in most cases, don't you, at least the first trade, aren't they contemporaneous? If I decide I want to invest in IBM, I have to go to a broker. Usually you don't just say, okay, you're going to be my broker, but I'm not going to do anything for two months. It may be. It may be. I mean, that's not likely. That's not a realistic scenario. You're usually going to go to a broker because you want to set up an account and you want to start to trade. And usually you have a trade in mind, at least one trade in mind when you first do it. You may have a trade in mind, but the particular trade in mind, say, by IBM, has nothing to do with that decision to invest in IBM as opposed to Apple or some other company, has nothing to do with TD Ameritrade's promise to use best execution for all trades. And that's the difference here. And that's where Chad Warren talks about a connection that matters to the decision to purchase or sell securities. And that's just not the situation here. That's not what SLUSA was designed to, which was prevent plaintiffs from avoiding the PSLRA for filing federal securities fraud claims. And that's not what we have here. Inducing investors to use a particular broker was not what Section 10b was designed for. In fact, there's a completely separate part of the 1934 Act, Section 15, which deals with brokers and courts have held that the failure to use best execution may violate Section 15 if they fail to use best execution. But SLUSA pertains to 10b, 10b-5 claims. And that's completely separate. Are there no further questions? These claims all relate not to the price that the customer or the charge to the customer. It's the way the trade is actually executed, correct? It's both. So the breach of contract claim is also the investors paying a commission for TD Ameritrade to use best execution, which they don't do. So there's the damages from that, as opposed to the difference in price improvement based on the failure to use best execution. That all relates to the execution, not to the price. I mean, I don't know what TD Ameritrade charges, but I know most of the brokerage firms now charge a flat fee, right? Yes. So if it's $20 to execute a trade, the fact is there's nothing about the $20 that makes a difference here. It's how they execute the trade once you pay the $20, right? Right, although the benefit of the bargain would be, you know, for $20, investors are assuming that TD Ameritrade would follow through with the client agreement and use best execution factors. And the difference there is the misrepresentation, as in where Chadbourne would require, would have to induce the fraud, where earlier cases David talked about merely enabling the fraud or that somehow the price is, that the misrepresentation had some impact on the price. But in order for there to be an in connection with, the misrepresentation has to induce the fraud, induce the decision to purchase and sell securities. Thank you. Ms. Hurst, good morning. You may proceed. Good morning. Leslie Hurst, counsel for plaintiff and appellant Tyler Verdick. Tyler Verdick challenges the, or we're going to speak about the SLUSA requirements of misrepresentation and omission and the in connection with. For the misrepresentation and omission, I'm going to reserve the majority of my time for rebuttal and adopt the arguments of counsel Frizzola. On the in connection with prong, briefly because we were just talking about it, I would want to point out that Chadbourne says in connection with requires a causality element. There has to be a causal connection, a material causal connection between the fraud and someone's decision to purchase, sell, or hold a covered security. Plaintiff Verdick says there is no connection, there is no inducement between violation of best execution and his decision to purchase, sell, or buy covered security. There's certainly but-for causation. How is there but-for causation, your honor? I'm not clear. Without the relationship with Ameritrade, that particular transaction would not have occurred. But the misconduct violating best execution isn't connected with his decision to go out and buy Microsoft, to take the risk of a Microsoft security, to pay the price he agreed to pay for the Microsoft security. The fraud and the inducement is precisely comes at the, it plays out at the execution of the trade. To say they're unrelated as to me, not. We're not saying, you have to have a relationship with TD Ameritrade to make a trade. But that relationship did not cause, is not material to the plaintiff's decision to buy any particular securities. And what I want to point out is that TD Ameritrade says the same thing. It's material to the decision to buy or sell through TD Ameritrade. Through TD Ameritrade. Okay, well that is the transaction, that is the covered security transaction. No, because if you look at Chadbourne, and if you look at Davit, and if you look at Zandford, it has to be material to someone's decision to buy a particular security. Not material to a decision to trade through TD Ameritrade versus Scottrade versus some other broker. It has to be material to, I want to buy Microsoft because it fits within my security buying strategy. Because I like the price, because I like the risk. It has to be material to that decision. Not material to who you're going to trade through, not material to who the broker is. I hear you say that, I understand what you're saying, but it's not necessarily, ain't necessarily so. Defendants agree with me. Defendants in the client case, and I would ask the court to take judicial notice of this document. This is their rule 26F report. Defendants agree with us. Defendants say that the misrepresentations concerning best execution were not material to plaintiff's decision to buy or sell any security through TD Ameritrade. We say it's not material, TD Ameritrade says it's not material, and so it is incorrect for the district court below to find a material connection when neither party says that there is one. And I'd like to reserve the remainder of my time for the rebuttal, please. Very well. I'm terrified, what did you just read from? Yes, and I apologize. I just read from, it is rule 26F report, and I would ask the court to take judicial notice of this on its own motion. It is document 122, filed by the parties in the client case in the district court below. Is it clearly part of our record on appeal? It is not part of the record on appeal, that's why I'm asking you to take judicial notice of it. In the summary judgment, on the summary judgment appeal, we review based on the summary judgment record. This is not summary judgment. And the court can take judicial notice of documents of a lower court at any time. Good morning, are you Mr. Hockman? Yes, good morning, your honors. You may proceed. Rob Hockman for TD Ameritrade. Judge Loken, it ain't so. Simply put, and I'll start with in connection with, because that's where so much of the time was spent. The language of the statute is in connection with. What we're talking about here is the guts, the very pipes through which trades in what are admitted to be covered securities happen. They're claiming that we're making, and I'll get to this in a minute, what are clearly misrepresentations, omissions, or engaging in deceptive conduct with respect to the mechanisms through which their trades in covered securities happen. If in connection with has any meaning at all related to the English use of those words. That surely is in connection with. And I would add also, Judge Loken, where you began earlier about the fact that what they're seeking to recover are disgorgement of the fees that only happen when trades in covered securities actually happen. Further punctuates the point. And that's, I think, why not only did the Seventh Circuit say, in fact, out loud in Holtz, that allegations relating to best execution are clearly in connection with, for sleuths of purposes. But in Kurz, the Seventh Circuit said it would be frivolous to suggest otherwise. And I think that's just as clear as can be here. As for Dabbitt and Chadbourne, I would say this. First of all, as has been observed by the panel, Chadbourne goes out of its way to say it's not changing the standard in Dabbitt. Now, the Supreme Court doesn't often overrule or modify its prior opinions. But when it does, it usually says so. But what it never does, what it never does is it says, I'm not doing it. But then on the down low, it does it. And mind you, it's not only Dabbitt that would, the plaintiff's position on in connection with, which strike a heart through, it's Zanderford as well. Because, and that's of course not a Slusa case. But nonetheless, the same language from Tenby in connection with was at issue in Zanderford. And for the Supreme Court to basically gut two very important prior decisions of its own, silently, while saying out loud it's not changing anything, would be a remarkable holding of this court. And I think it would be, it would be error. And with, and with respect to other courts that are cited in the briefs that they say, you know, Chadbourne broke new ground. It's true Chadbourne broke new ground. But it broke new ground on the question that was in front of Chadbourne. Which is simply whether a claim that doesn't involve anyone except the fraudster have obtaining direct or indirect ownership interest in covered securities can be covered by Slusa. Here, that's not an issue. Everybody agrees with that. So again, I just don't think there's anything there with respect to in connection with. As for materiality, which was the subject of the last point, I would say this, what matters from the point of view of materiality in any kind of fraud or negligent misrepresentation claim is material with respect to the decision. And here it would be with respect to the decision that's in connection with the trade in covered securities. That's why, Judge Loken, you're exactly right to point out that, and Judge Molloy as well, to point out that what's at issue here, by a plaintiff's own admission, is the decision to go with TD Ameritrade. The SEC in their amicus brief in Dabbitt pointed out, as Judge Molloy pointed out, that you don't sign up with a broker just to sign up with a broker. You sign up with a broker to engage in transactions in covered securities. And so anything that has an impact on that decision, anything that's material to that decision is material and in connection with a trade, a covered securities transaction. So let's- What do you say to the argument that there could never be a breach of contract claim? Yeah, so that's where I was going next. I don't think that's true. We don't have an issue with Freeman. We don't think there's any problem with Freeman. Freeman was a case about cost of insurance and what the phrase cost of insurance in a universal life policy means. And sure, there are lots of ways to breach a contract. There are lots of ways to do it. What matters in every case, as this court has said over and over and over again, and what every other court agrees, what matters is not the label breach of contract or as you heard from the Zola plaintiffs this morning, pure breach of contract. You don't change the underlying conduct that's alleged to be lawful just because you slap unlawful. That's just because you slap a particular label on it. In Freeman, the nature of the dispute was everybody agreed cost of insurance is the standard, but nobody was sure whether what was being practiced was in fact the kind of industry standard for what cost of insurance means. There was a dispute about that. That has nothing to do with saying I'm going to do X and never meaning to do X. And the conduct at issue here is unambiguous. It has three basic components. And it doesn't matter whether you think of it as breach of fiduciary duty, breach of contract, whatever. The conduct is one, TD Ameritrade has a large volume of retail order flow. Everybody agrees with that. All of the complaints. This is why it doesn't matter that the district court resolved this case all at once, all of these cases all at once. So that's all agreed. Two, high frequency traders in the market centers that work with them are engaged in what are called manipulative practices by both Zarbacker and Verdique. As the Zola claims, their practices give HFTs preferential access, scamming individual investors. Everybody agrees with that. And in fact, in their reply briefs, the plaintiffs all accept that the practices that they're alleging are a problem by high frequency traders in the market centers are a deceptive or manipulative device. They agree with that. And that brings us to the third part. They say, well, but that's a deceptive and manipulative device by HFTs and not TD Ameritrade. But their allegation is that we feed the trades. We feed our retail investor flow to those market centers, to the HFTs, because we want the money. Because we're willing to chase the money that those entities are willing to pay for it. We're willing to put our interests ahead of our obligations to our customers. This is their allegation. And our own contractual obligations. Now, and we do this knowing that that's what we're doing. And we do this with eyes wide open. And we even, according to the allegations in the complaint, try to keep it as secret as possible. Now, the court in King Gate and other courts have made clear that if you're complicit in the deceptive or manipulative conduct of others, the claim is covered by SLUSA. And here, I would say, it's even more than, the allegation is even more than complicit. We're doing this, we're participating actively by giving the fuel to this engine of manipulation that the plaintiffs are alleging is going on. That's the allegations. Obviously, we dispute that and all of that. But that's the story. And it's the story of all the complaints. And when that kind of underlying conduct is what's alleged to be wrongful, it doesn't matter if, as Sarbacher and Zola said, well, they made a representation. They were going to do something different. And they didn't do it. Well, that's a straight misrepresentation claim. Sarbacher bellies up to the bar and actually says, sure, this is fraud. That's clarifying, but it's not required. It doesn't matter if Verdik sort of closes his eye, or Verdik, I'm not sure how to pronounce that, closes his eyes to the contract and just says, it's a breach of fiduciary duty. It's still a misrepresentation or omission or deceptive or manipulative device. And you didn't hear anything about deception or manipulative device from the plaintiffs earlier. Ultimately, that's all you need to know to affirm the SLUSA judgment below. I'm happy to talk about conflict preemption, if your honors would like. But we think this is a pretty solid SLUSA preemption case. We think it's a very, very strong conflict preemption case as well in light of the SEC's long study of this issue, greater than 20 years. Consistently, eyes wide open, looking at the fact that they recognize that there is a potential for conflict of interest. But they also recognize the potential for efficiencies and competition in the market for execution of trades that they want to take advantage of. And their solution across a variety of administrations for well in excess of 20 years has been disclosure, increased disclosure over time. And I can talk about how I think, I believe that the potentially varying state law standards, and especially potentially varying state law standards as applied by juries and trials would muck with what the SEC considers a very important uniform national system that's going to promote efficiency. But if there are no further questions, I'll yield the remainder of my time. Very well. Your honor. That was fast. Zola and the Verita complaints do not allege any misrepresentations or nondisclosures. One is a straight breach of contract case. And our case is a straight breach of fiduciary duty case. We allege that TD Ameritrade had an obligation to take certain steps under a fiduciary duty of best execution. It didn't take those steps. And there you have a breach of fiduciary duty. We don't allege nondisclosures. We don't allege misrepresentations. It's a straightforward breach of fiduciary duty case that is specifically not precluded by SLUSA. Chadbourne is very clear and adamant that SLUSA does not preclude every breach of contract or state run-of-the-mill fiduciary duty case. And that's what we have here. In fact, it is right on point with the Ninth Circuit decision in the Freeman case. That was a breach of contract case where the parties disputed, does the conduct violate a certain term of the contract or does it not? Plaintiff said the conduct violates it and defendant said it didn't. We have the same thing here. Verdict says that the conduct not taken by TD Ameritrade violated its fiduciary duties. TD Ameritrade says its conduct didn't. In the Klein case, in its answer and in the document I referred to earlier, the Rule 26F report, they say we did not violate best execution. So we don't have to prove misrepresentations. We don't have to prove nondisclosures. All we have to prove is that we're right, the conduct is a breach, or they're right, the conduct is not a breach. So we don't fall within the misrepresentation or omission requirement of SLUSA. I guess I would also then, since I've got time, like to talk about why we... Describe what you'd prove was the breach. The breach would be that the duty of best execution requires TD Ameritrade to take certain steps. It requires it to act in a certain way. Go out and investigate which of the trading venues are best for its clients. And there's particular steps that the common law requires it to take. Are you doing this trade by trade now that we're at trial? No, we're not doing it trade by trade. They can group trades, but for the trades as grouped, they nonetheless have to take certain steps to determine the best trading venue. Our allegations, and what we would prove at trial, is that they did not take those steps and that they violated best execution. TD Ameritrade's position is that its conduct did not violate best execution. So it's not going to be what they said or didn't say, what they disclosed or didn't disclose. It's going to be what did they do and was their conduct up to the appropriate standard that was required of them. And the definition of best execution when you put in your case would be as described in federal regulations and guidelines? It would be similar to that. We're suing under a common law duty. There's a common law duty of best execution. It is essentially the same as the FINRA regulation. Essentially the same? Essentially the same. I cannot think of any difference. I cannot think of any difference. What your opponent says is, whatever label you put on it, fraud, misrepresentation, breach of contract, whatever, it all gets down to what you were just talking about, best execution. They're not discharging their duty, whether it's a fiduciary or contractual, to execute the transaction in the best manner. Now, how do you disassociate the execution from the sale of the security? How can you have an execution that isn't in connection with the purchase or sale of a security? Well, that's going back to the in connection with requirement as opposed to what is the underlying conduct. I mean, you're putting a lot of different labels on it, but at the end of the day, it's best execution. Everybody seems to agree on that. And you only execute if you buy or sell a security. What I meant is that I think you're now talking about the in connection with requirement of SLUSA as opposed to the misrepresentation or remission requirement. For the in connection with, I think you do have to slice it as soon as we say. You can't just say, well, these things are connected. A broker, the selection of a broker is connected with your ultimate purchase. Yes. But I think the Chadbourne Court says you have to look for more discrimination. You have to look to say, to see if the misconduct induced the actual purchase. And so I think you just have to cut it slimmer. To say that, is this in the field of securities? Well, yes, it is. Is it connected with securities? Ultimately, it is. But Chadbourne says you have to look at it with more discrimination. You have to look at it closer. And we just don't have that material inducement between the misconduct and the decision to buy or sell. So, I mean, that's my answer. Yes, it's in the field of securities, but it didn't induce the decision to buy or sell. Basically, your client's claim is, look, when I hired TD, I assumed that they would honor their requirement to make the best possible deal for me in terms of reducing the commissions to maximum and to benefit my position to the maximum. Absolutely. And that's why it's a fiduciary duty because it's not a bargain for a term. It's not something they can disclose away. It's not something they can waive. By law, they're required to use best execution, and the customer doesn't even have to know that duty exists. They still are obligated by law to select the best trading venue for their customers. And you're too kind to say this, but you could characterize your opponent's argument as disingenuous verbiage. I wouldn't agree with that. I would say that, and I would gladly say that. I think that's not unkind at all. And your measure of damages for the breach of duty would, again, be discordant? It would be probably the commissions. I mean, the traditional damage. Commissions on individual crime. Right, exactly, exactly. That's the traditional measure of remedy for a breach of fiduciary duty. Very well. The case is submitted, well argued, well briefed, and it is now under consideration. Thank you. The case is now under submission.